Bradley S. Albert, Admitted in Md.
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3670; (202) 326-3384 (fax)
balbert@ftc.gov

Attorney for Plaintiff Federal Trade Commission

George G. Gordon
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000; (215) 655-2382 (fax)
george.gordon@dechert.com

Attorney for Defendants Endo International plc and
Endo Pharmaceuticals, Inc.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No 17-cv-00312 |
| Plaintiff, | |
| v. | **STIPULATED ORDER FOR PERMANENT INJUNCTION** |
| ENDO PHARMACEUTICALS INC., | |
| and | |
| ENDO INTERNATIONAL PLC, | |
| Defendants. | |

     The Federal Trade Commission ("Commission") filed its Complaint for Injunctive Relief ("Complaint") in this matter pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Commission and Defendants Endo Pharmaceuticals Inc. and Endo International plc, by their respective attorneys, have reached an agreement to resolve this case through settlement, and without trial or final adjudication of any issue of fact or law,

and stipulate to entry of this Stipulated Order for Permanent Injunction ("Order") to resolve all matters in dispute in this action.

**FINDINGS**

1. This Court has jurisdiction over the parties and the subject matter of this action. Defendants have stipulated that, for purposes of this Order alone, the Court has jurisdiction over Endo Pharmaceuticals Inc. and Endo International plc.

2. Venue for these matters is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c), and under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

3. The Complaint alleges that Defendants engaged in anticompetitive acts that constitute an unfair method of competition in violation of Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b), and an acquisition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, by entering an agreement that foreclosed competition from generic equivalents of the brand-name drug Lidoderm® and later reduced competition between sellers of generic lidocaine patches.

4. Defendants admit the facts necessary to establish the personal and subject matter jurisdiction of this Court in this matter only.

5. Defendants deny the charges in the Complaint and dispute that the Commission is entitled to obtain relief.

6. This Order does not constitute any evidence against Defendants, or an admission of liability or wrongdoing by Defendants, in this case or in any other litigation involving Lidoderm® or Opana ER®.  This Order shall not be used in any way, as evidence or otherwise, in any other litigation or proceeding; *provided that*, nothing in this provision prevents the Commission or Defendants from using this Order in any proceeding regarding enforcement or modification of this Order or as otherwise required by law.

7. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees in this action and the Federal Court Actions.

8.      Entry of this Order is in the public interest.  The Commission and Defendants have agreed to stipulate to entry of this Order to finally resolve the claims and litigations between them in the FTC Litigation and the Federal Court Actions.

**STIPULATIONS**

1.      Defendants stipulate that venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c), and under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

2.      Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

3.      Defendants stipulate that they shall comply with the provisions of this Order pending its entry by the Court.

4.      Defendants and the Commission have agreed to entry of this Order to finally resolve all claims and litigations between the Commission and Defendants in the FTC Litigation and the Federal Court Actions.

5.      The Commission stipulates that it will not file litigation or any other proceedings against Defendants asserting, or seeking remedies based on, Resolved Claims, other than any legal proceeding regarding enforcement or modification of this Order.

6.      The parties stipulate that the Commission's dismissal of the *Federal Trade Commission v. Endo Pharmaceuticals Inc.,* Civ Action No. 16-cv-1440 (E.D. Pa.) shall be treated for all purposes as being *with prejudice* with respect to any claims asserted in that action against Defendants.

7.      Defendants stipulate that they shall bear their own costs in the Federal Court Actions and shall not make any claims against the Commission for attorneys' fees or costs in the Federal Court Actions.

8.      Defendants stipulate that, within one day of the entry of this Order, they will file a voluntary dismissal with prejudice of their claims in the Declaratory Judgment Actions in the form provided in Exhibit 1 to this Order.

9.     The Commission stipulates that, within one day of the entry of this Order, the Commission will file a motion for voluntary dismissal with prejudice of its claims against Defendants, including but not limited to Par Pharmaceutical Companies, Inc., as well as Paddock Holdings, LLC and Paddock Laboratories, Inc., in *Federal Trade Commission v. Actavis, Inc.*, Civ. Action No. 09-cv-955 (N.D. Ga.), in the form provided in Exhibit 2 to this Order.

## I.

**IT IS ORDERED** that, as used in this Order, the following definitions shall apply:

A.     "Commission" means the United States Federal Trade Commission.

B.     "Endo Pharmaceuticals" means Endo Pharmaceuticals Inc., any joint venture, subsidiary, division, group, or affiliate Controlled currently or in the future by Endo Pharmaceuticals Inc., their successors and assigns, and the respective directors, officers, employees, agents, and representatives acting on behalf of each.

C.     "Endo International" means Endo International plc, any joint venture, subsidiary, division, group, or affiliate Controlled currently or in the future by Endo International plc, their successors and assigns, and the respective directors, officers, employees, agents, and representatives acting on behalf of each.

D.     "Defendant" means either Endo Pharmaceuticals or Endo International.

E.     "Defendants" means Endo Pharmaceuticals and Endo International.

F.     "505(b)(2) Application" means an application filed with the United States Food and Drug Administration pursuant to Section 505(b)(2) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(b)(2).

G.     "ANDA" means an Abbreviated New Drug Application filed with the United States Food and Drug Administration pursuant to Section 505(j) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j).

H.     "Authorized Generic" means a Drug Product that is manufactured pursuant to an NDA and Marketed in the United States under a name other than the proprietary name identified in the NDA.

1    I.      "Brand/Generic Settlement" means any agreement or understanding that settles a Patent

2    Infringement Claim in or affecting Commerce in the United States.

3    J.      "Brand/Generic Settlement Agreement" means a written agreement that settles a Patent

4    Infringement Claim in or affecting Commerce in the United States.

5    K.      "Branded Subject Drug Product" means a Subject Drug Product Marketed in the United

6    States under the proprietary name identified in the NDA for the Subject Drug Product.

7    L.      "Commerce" has the same definition as it has in 15 U.S.C. § 44.

8    M.      "Control" or "Controlled" means the holding of more than fifty percent (50%) of the

9    common voting stock or ordinary shares in, or the right to appoint more than fifty percent (50%)

10   of the directors of, or any other arrangement resulting in the right to direct the management of,

11   the said corporation, company, partnership, joint venture, or entity.

12   N.      "Contingent Supply Agreement" means a Supply Agreement that: (i) is contingent on the

13   Generic Filer's inability to market the Generic Subject Drug Product on or after the Generic

14   Entry Date because (x) the FDA has not granted final approval of the Generic Filer's ANDA or

15   505(b)(2) Application for the Generic Subject Drug Product and/or (y) the Generic Filer cannot

16   manufacture commercial quantities of the Generic Subject Drug Product; and (ii) terminates

17   within thirty (30) days after the Generic Filer has final FDA approval and can manufacture

18   commercial quantities of the Generic Subject Drug Product using good faith, commercially

19   reasonable efforts,

20          *provided, however,* the Generic Filer may take delivery of, market, and sell quantities of

21   Authorized Generic ordered prior to termination of the Supply Agreement *so long as* the total

22   quantity of Authorized Generic delivered to the Generic Filer following termination of the

23   Supply Agreement: (i) does not exceed the total quantity needed by the Generic Filer (as

24   reflected in forecasts provided to the NDA Holder prior to termination of the Supply Agreement)

25   during the eight (8) months following (x) termination of the Supply Agreement, if termination

26   occurs after the Generic Entry Date, or (y) the Generic Entry Date, if termination occurs before

27   the Generic Entry Date; and (ii) is delivered within eight (8) months of termination of the Supply

28   Agreement.

O.      "Declaratory Judgment Actions" means *Endo Pharmaceuticals Inc., et al. v. Federal Trade Commission*, Civ. Action No. 16-cv-5599 (E.D. Pa.) and *Endo Pharmaceuticals Inc., et al. v. Federal Trade Commission*, Civ. Action No. 16-cv-5600 (E.D. Pa.).

P.      "Drug Product" means a finished dosage form (e.g., tablet, capsule, solution, or patch), as defined in 21 C.F.R. § 314.3(b), approved under a single NDA, ANDA or 505(b)(2) Application, that contains a drug substance, generally, but not necessarily, in association with one or more other ingredients.

Q.      "Exception" means the following in a Brand/Generic Settlement:

   1.      compensation for saved future litigation expenses, ***but only if*** the total compensation the NDA Holder agrees to provide to the Generic Filer during the sixty (60) day period starting thirty (30) days before and ending thirty (30) days after executing the Brand/Generic Settlement Agreement does not exceed a maximum limit, which is initially set at seven million dollars ($7,000,000) and shall be increased (or decreased) as of January 1 of each year following entry of this Order by an amount equal to the percentage increase (or decrease) from the previous year in the annual average Producer Price Index for Legal Services (Series Id. PCU5411--5411--) published by the Bureau of Labor Statistics of the United States Department of Labor or its successor;

   2.      the right to Market, as of an agreed upon Generic Entry Date: (i) Generic Product(s) in the United States under an ANDA or 505(b)(2) Application (x) that is controlled by the Generic Filer and was not transferred to the Generic Filer by the NDA Holder, or (y) to which the Generic Filer has a license from a party other than the NDA Holder; or (ii) an Authorized Generic of the Subject Drug Product; provided that this Exception shall apply regardless of whether or not the Generic Filer must pay for the right to Market and, if so, the terms and conditions governing such payment;

   3.      provisions to facilitate, by means other than the transfer of goods or money, the Generic Filer's ability to secure or maintain final regulatory approval, or

commence or continue the Marketing, of a Generic Product, by, *inter alia*, providing covenants, waivers, permissions, releases, dismissals of claims, and/or authorizations;

4.  waiver or limitation of a claim for damages or other monetary relief based on prior Marketing of the Generic Subject Drug Product, **but only if** the NDA Holder and the Generic Filer do not agree, and have not agreed, to another Brand/Generic Settlement for a different Drug Product during the sixty (60) day period starting thirty (30) days before and ending thirty (30) days after the execution of the Brand/Generic Settlement Agreement; or

5.  a continuation or renewal of a pre-existing agreement between an NDA Holder and a Generic Filer **but only if**: (i) the pre-existing agreement was entered into at least 90 days before the relevant Brand/Generic Settlement Agreement, (ii) the terms of the renewal or continuation, including the duration and the financial terms, are substantially similar to those in the pre-existing agreement, and (iii) entering into the continuation or renewal is not expressly contingent on agreeing to a Brand/Generic Settlement.

R.  "Exempted Agreement" means a Materials Agreement or Supply Agreement that meets all of the following conditions:

1.  the price is above the Fully Allocated Manufacturing Cost, meaning:

    a.  if the Agreement is a Materials Agreement, the Materials Price charged by the NDA Holder for Materials provided through the Materials Agreement is at or above the Fully Allocated Manufacturing Cost incurred by the NDA Holder per unit of the relevant Materials, or

    b.  if the Agreement is a Supply Agreement, the Supply Price charged by the NDA Holder for the Authorized Generic of the Subject Drug Product is at or above the Fully Allocated Manufacturing Cost incurred by the NDA Holder per unit of the Authorized Generic of the Subject Drug Product provided under the agreement;

2.     the Brand/Generic Settlement Agreement containing or incorporating the
Materials Agreement or Supply Agreement is the only Brand/Generic Settlement
Agreement that the NDA Holder and the Generic Filer have entered, or agreed to
enter, during the sixty (60) day period starting thirty (30) days before and ending
thirty (30) days after the execution of the Brand/Generic Settlement Agreement;

3.     within fourteen (14) days after signing the Brand/Generic Settlement Agreement
containing or incorporating the Materials Agreement or Supply Agreement,
Defendants Submitted to the Monitor a full and complete copy of the
Brand/Generic Settlement Agreement, including any Materials Agreement and/or
Supply Agreement;

4.     within fourteen (14) days after the NDA Holder provides to the Generic Filer the
Materials Price or Supply Price, as applicable, Defendants Submitted to the
Monitor notification of the relevant Materials Price or Supply Price;

5.     within thirty (30) days after beginning supply under the relevant Materials
Agreement or Supply Agreement, the NDA Holder Submitted to the Monitor:

    a.   if a Materials Agreement, a verified written statement containing (i) the Fully
    Allocated Manufacturing Cost per unit for the Materials and (ii) a detailed
    calculation of the Fully Allocated Manufacturing Cost for the Materials, stated
    separately by cost component and on a per-unit basis; and

    b.   if a Supply Agreement, a verified written statement containing (i) the Fully
    Allocated Manufacturing Cost per unit for the relevant Authorized Generic of
    the Subject Drug Product and (ii) a detailed calculation of the Fully Allocated
    Manufacturing Cost for the Authorized Generic of the Subject Drug Product,
    stated separately by cost component and on a per-unit basis; and

6.     if the NDA Holder is not a Defendant, the Materials Agreement or Supply
Agreement, as applicable, requires the NDA Holder to (i) provide the notification
required by subparagraphs I.S.(5) and (ii) cooperate with any reasonable request
by the Monitor or staff of the Commission for documents and information to

1                determine the relevant Fully Allocated Manufacturing Cost, including without

2                limitation and subject to any demonstrated legally recognized privilege, providing

3                the Monitor reasonable access to personnel, books, documents, and records kept

4                in the ordinary course of business;

5       *provided that*, notwithstanding subparagraph I.S(5) or subparagraph I.S(6), a Materials

6   Agreement or Supply Agreement in which a Defendant is the Generic Filer shall also be

7   considered an Exempted Agreement if it complies with subparagraphs I.S(1) to (4) ***and***:

8           a.      if a Materials Agreement, Defendants Submit to the Monitor within thirty (30)

9                days of beginning to receive the Materials, a verified written statement containing

10               (i) Defendants' best estimate of what would be the Fully Allocated Manufacturing

11               Cost per unit for the Materials if manufactured or sourced by the Generic Filer,

12               including a separate estimate of each cost component on a per-unit basis, and (ii)

13               a description of the terms and conditions of any agreement(s), offer(s), purchase

14               order(s), or price quote(s) a Defendant has entered into or received for supply of

15               the Materials in connection with manufacture of the Subject Drug Product and

16               other facts and circumstances, if any, that Defendants deem relevant to

17               understanding such terms and conditions; and

18           b.      if a Supply Agreement, it is a Contingent Supply Agreement and Defendants

19               Submit to the Monitor within thirty (30) days of beginning to receive the

20               Authorized Generic, a verified written statement containing (i) Defendants' best

21               estimate of what would be the Fully Allocated Manufacturing Cost per unit for

22               the Subject Drug Product if manufactured by the Generic Filer and (ii) a detailed

23               calculation of the estimated Fully Allocated Manufacturing Cost, including an

24               estimate of each cost component on a per-unit basis.

25   S.      "Federal Court Actions" means the Declaratory Judgment Actions, *Federal Trade*

26   *Commission v. Endo Pharmaceuticals Inc.*, Civ. Action No. 16-cv-1440 (E.D. Pa.), which was

27   dismissed without prejudice by the Commission on October 25, 2016; and *Federal Trade*

28   *Commission v. Actavis, Inc.*, Civ. Action No. 09-cv-955 (N.D. Ga.).

1   T.      "FTC Investigation" means the pre-complaint investigation conducted by FTC staff under

2   File No. 141-0004.

3   U.      "FTC Litigation" means any legal proceeding brought by the Commission that alleges the

4   Lidoderm Settlement Agreement and/or the Opana Settlement Agreement violates the law(s)

5   enforced by the Commission.

6   V.      "Fully Allocated Manufacturing Cost" means: (1) direct costs incurred to produce or, if

7   applicable, to acquire, the Subject Drug Product or Materials, determined in accordance with

8   GAAP, as consistently applied in accordance with past practice and in the ordinary course of

9   business, including, but not limited to (x) acquisition costs or (y) if applicable, materials, labor,

10  manufacturing costs, packaging, labeling, testing, quality control, storage, insurance, and product

11  maintenance; (2) the cost to ship the Subject Drug Product or Materials to the Generic Filer, and

12  (3) administrative and overhead expenses associated with production or, if applicable, the

13  acquisition of the Subject Drug Product or Materials, including, but not limited to, administrative

14  labor costs, maintenance, information technology, quality assurance, insurance, depreciation of

15  the equipment, and depreciation of the facility, allocated in accordance with past practice and in

16  the ordinary course of business. To the extent the NDA Holder does not allocate administrative

17  and overhead expenses associated with the Subject Drug Product to the Subject Drug Product,

18  the NDA Holder shall do so at a proportion of the NDA Holder's COGS of the Subject Drug

19  Product to the NDA Holder's total COGS (for purposes of this definition, COGS means the

20  NDA Holder's cost of goods sold, determined in accordance with GAAP, as consistently applied

21  in accordance with past practice and in the ordinary course of business).

22  W.      "Generic Entry Date" shall mean the date in a Brand/Generic Settlement Agreement,

23  whether certain or contingent, on or after which a Generic Filer is authorized by the NDA Holder

24  to begin manufacturing, using, importing or Marketing the Generic Subject Drug Product.

25  X.      "Generic Filer" means a party to a Brand/Generic Settlement who controls an ANDA or

26  505(b)(2) Application for the Subject Drug Product or has the exclusive right under such ANDA

27  or 505(b)(2) Application to distribute the Subject Drug Product.

28

Y.     "Generic Product" means a Drug Product manufactured and/or sold under an ANDA or pursuant to 505(b)(2) Application.

Z.     "Generic Subject Drug Product" means the Generic Product that is the subject of the Patent Infringement Claim being resolved by the Brand/Generic Settlement.

AA.    "Lidoderm Settlement Agreement" means the Settlement and License Agreement between Endo Pharmaceuticals Inc. and Watson Laboratories, Inc. resolving the ANDA patent litigation involving the brand-name drug Lidoderm that is the subject of the Complaint in this action.

BB.    "Market," "Marketed," or "Marketing" means the promotion, offering for sale, sale, or distribution of a Drug Product.

CC.    "Materials" means components or ingredients used in the manufacturing of a Subject Drug Product, including, but not limited to, hard-to-source excipients, hard-to-source active pharmaceutical ingredients, hard-to-source packaging, devices, or kits for injectables.

DD.    "Materials Agreement" means provisions in, or incorporated into, a Brand/Generic Settlement Agreement providing for the supply of Materials to the Generic Filer by the NDA Holder for securing and/or maintaining regulatory approval, or manufacturing and Marketing by the Generic Filer of the Subject Drug Product, including the terms and conditions of any such supply.

EE.    "Materials Price" means the total actual per-unit price charged by the NDA Holder for Materials provided through a Materials Agreement, including any transfer price and royalty to be paid by the Generic Filer, net of any discounts, allowances, rebates, or other reductions.

FF.    "Monitor" means an individual appointed pursuant to the terms of Section IV below.

GG.    "NDA" means a New Drug Application filed with the United States Food and Drug Administration pursuant to Section 505(b) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(b), including all changes or supplements thereto that do not result in the submission of a new NDA.

HH.   "NDA Holder" means a party to a Brand/Generic Settlement that controls the NDA for the Subject Drug Product or has the exclusive right to distribute the Branded Subject Drug Product in the United States.

II.   "No-AG Commitment" means any agreement with, or commitment or license to, the Generic Filer that prohibits, prevents, restricts, requires a delay of, or imposes a condition precedent upon the research, development, manufacture, regulatory approval, or Marketing of an Authorized Generic,

provided however, that agreement by the Generic Filer to pay royalties to the NDA Holder for the right to Market the Generic Subject Drug Product or an Authorized Generic of the Subject Drug Product, including agreement on the terms and conditions governing payment of such royalties, shall not be considered a No-AG Commitment.

JJ.   "Opana Settlement Agreement" means the Settlement and License Agreement and Development and Co-Promotion Agreement between Endo Pharmaceuticals Inc. and Impax Laboratories, Inc. resolving the ANDA patent litigation involving the brand-name drug Opana ER that is the subject of the FTC Investigation.

KK.   "Patent Infringement Claim" means any allegation threatened in writing or included in a complaint filed with a court of law that a Generic Product may infringe one or more U.S. Patents held by, or licensed to, an NDA Holder.

LL.   "Payment by the NDA Holder to the Generic Filer" means a transfer of value, other than a No-AG Commitment, by the NDA Holder to the Generic Filer (including, but not limited to, money, goods, or services), regardless of whether the Generic Filer purportedly transfers value in return, where such transfer is either (i) expressly contingent on entering a Brand/Generic Settlement Agreement, or (ii) agreed to during the sixty (60) day period starting thirty (30) days before and ending thirty (30) days after executing a Brand/Generic Settlement Agreement.

MM.   "Resolved Claims" means antitrust claims, or other claims based on the competitive impact of the conduct alleged in *Federal Trade Commission v. Endo Pharmaceuticals Inc.*, Civ. Action No. 16-cv-1440 (E.D. Pa.) (the "Original Action"), including but not limited to claims alleging unfair methods of competition under § 5 of the FTC Act, that were or could have been

1    included in the Original Action or which arise from or are related to allegations, claims, or

2    remedies included in the Original Action.

3    NN.    "Submit to the Commission" or "Submitted to the Commission" means to file with the

4    Office of the Secretary of the Commission and send an electronic copy to the Compliance

5    Division of the Commission at bccompliance@ftc.gov.

6    OO.    "Submit to the Monitor" or "Submitted to the Monitor" means to deliver to the Monitor

7    appointed pursuant to the Order or, if no Monitor is appointed under this Order, to Submit to the

8    Commission.

9    PP.    "Subject Drug Product" means the Drug Product for which one or more Patent

10   Infringement Claims are settled under a given Brand/Generic Settlement.  For purposes of this

11   Order, the Drug Product of the NDA Holder and the Generic Filer to the same Brand/Generic

12   Settlement shall be considered to be the same Subject Drug Product.

13   QQ.    "Supply Agreement" means provisions in, or incorporated into, a Brand/Generic

14   Settlement Agreement providing for the supply of the Subject Drug Product to the Generic Filer

15   by the NDA Holder for the Marketing by the Generic Filer of an Authorized Generic on or after

16   the Generic Entry Date, including the terms and conditions of any such supply.

17   RR.    "Supply Price" means the total actual per-unit price charged by the NDA Holder for

18   supply provided through a Supply Agreement, including any transfer price and royalty to be paid

19   by the Generic Filer for the right to sell an Authorized Generic of the Subject Drug Product, net

20   of any discounts, allowances, rebates, or other reductions.

21   SS.    "U.S. Patent" means any patent issued by the United States Patent and Trademark Office,

22   including all renewals, derivations, divisions, reissues, continuations, continuations-in part,

23   modifications, or extensions thereof.

24                                          **II.**

25         **IT IS FURTHER ORDERED** that, in connection with any actions in or affecting

26   Commerce,

27

28

A.     Defendants shall cease and desist from, either directly or indirectly, or through any corporate or other device, individually or collectively entering into a Brand/Generic Settlement that includes:

      1.     (i) a No-AG Commitment and (ii) an agreement by the Generic Filer not to research, develop, manufacture, or Market the Subject Drug Product for any period of time; or

      2.     (i) any Payment by the NDA Holder to the Generic Filer that is not an Exception or an Exempted Agreement and (ii) an agreement by the Generic Filer not to research, develop, manufacture, or Market the Subject Drug Product for any period of time,

*provided that* any agreement entered into by an entity prior to that entity becoming part of a Defendant is not subject to the terms of this Order.

### III.

**IT IS FURTHER ORDERED** that:

A.     Nothing in this Order shall prohibit a Defendant from entering a written agreement, including a Brand/Generic Settlement, for which Defendant has Submitted to the Commission a request for prior approval of the agreement *so long as*:

      1.     within thirty (30) days of the Commission's receipt of the request for prior approval under this paragraph, the Director of the Bureau of Competition (or his or her designee) has not notified the Defendant in writing that, after considering the request in good faith, Commission staff believes the relevant agreement raises substantial questions regarding violation of Section 5 of the FTC Act or any other applicable law that the FTC has authority to enforce and of the reasons for such a belief; or

      2.     the Defendant has received the prior approval of the Commission,

      *provided, however*, nothing in Paragraph II shall prohibit a Defendant from executing a written agreement *so long as* such agreement contains a provision or provisions expressly stating: (1) the Defendant will Submit to the

1   Commission a request for prior approval of the agreement, and (2) the agreement

2   is not effective, and shall not become effective, until and unless (i) thirty (30)

3   days have passed since the request for prior approval was Submitted to the

4   Commission and the Director of the Bureau of Competition (or his or her

5   designee) has not notified the Defendant in writing that Commission staff believes

6   the agreement raises substantial questions regarding violation of Section 5 of the

7   FTC Act or any other applicable law that the FTC has authority to enforce, or (ii)

8   the Commission has approved of the agreement.

9   B.   Nothing in this Order shall prohibit a Defendant from purchasing, merging with, or

10  otherwise acquiring or being acquired by any party with which the Defendant has entered into a

11  Brand/Generic Settlement.

12                                              **IV.**

13  A.   The Commission may appoint a Monitor to ensure that any Materials Agreement or

14  Supply Agreement that a Defendant asserts is an Exempted Agreement meets the requirements

15  of Paragraph I.S of this Order.  The Monitor shall serve, without bond or other security, at the

16  expense of Defendants, on such reasonable and customary terms and conditions to which the

17  Monitor and Defendants agree and that the Commission approves.

18  B.   The Commission shall select the Monitor, subject to the consent of Defendants, which

19  consent shall not be unreasonably withheld.  If Defendants have not opposed, in writing and

20  identifying the reasons for opposing, the selection of any proposed Monitor within fourteen (14)

21  days after notice by the staff of the Commission of the identity of any proposed Monitor,

22  Defendants shall be deemed to have consented to the selection of the proposed Monitor.

23  C.   The Monitor's duties and responsibilities shall include the following:

24        1.   the Monitor shall act in a fiduciary capacity for the benefit of the Commission;

25        2.   the Monitor shall have the power and authority to perform his/her duties under

26             this Paragraph.  The Monitor shall exercise his/her power and authority and carry

27             out his/her duties and responsibilities in a manner consistent with the purposes of

28             this Order and in consultation with the Commission;

3.      the Monitor shall have authority to employ, at the expense of Defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Monitor's duties and responsibilities;

4.      the Monitor shall evaluate reports Submitted to the Monitor pursuant to the requirements of Paragraph V and within thirty (30) days from the date the Monitor receives a report, report in writing to the Commission concerning whether any Materials Agreement or Supply Agreement that Defendants assert is an Exempted Agreement meets the requirements of Paragraph I.S of this Order.

D.      Defendants shall grant and transfer to the Monitor, and such Monitor shall have, all rights, powers, and authority necessary to carry out the Monitor's duties and responsibilities under this Order, including but not limited to, the following:

1.      Defendants shall cooperate with any reasonable request of the Monitor and shall take no action to interfere with or impede the Monitor's ability to perform his/her duties as provided in this Paragraph;

2.      subject to any demonstrated legally recognized privilege, Defendants shall provide the Monitor full and complete access to personnel, books, documents, records kept in the ordinary course of business, facilities and technical information, and such other relevant information as the Monitor may reasonably request to perform his/her duties under this Paragraph;

3.      Defendants shall indemnify the Monitor and hold the Monitor harmless against any losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the Monitor's duties, including all reasonable fees of counsel, and other reasonable expenses incurred in connection with the preparations for, or defense of, any claim, whether or not resulting in any liability, except to the extent that such losses, claims, damages, liabilities, or expenses result from gross negligence, willful or wanton acts, or bad faith by Monitor; and

4.      Defendants may require the Monitor and each of the Monitor's consultants, accountants, attorneys, and other representatives and assistants to sign an

appropriate confidentiality agreement related to Defendants' materials and

information received in connection with the performance of the Monitor's duties,

*provided however*, such agreement shall not restrict the Monitor from

providing any information to the Commission or require the Monitor to report to

Defendants the substance of communications to or from the Commission or any

party to a Brand/Generic Settlement Agreement other than Defendants.

E.      The Commission may require the Monitor and each of the Monitor's consultants,

accountants, attorneys, and other representatives and assistants to sign an appropriate

confidentiality agreement related to Commission materials and information received in

connection with the performance of the Monitor's duties.

F.      The Commission may, on its own initiative or at the request of the Monitor, issue such

additional orders or directions as may be necessary or appropriate.

G.      If the Commission determines that the Monitor has ceased to act or failed to act

diligently, the Commission may appoint a substitute Monitor.  The Commission shall select the

substitute Monitor, subject to the consent of Defendants, which consent shall not be

unreasonably withheld.  If Defendants have not opposed, in writing and identifying the reasons

for opposing, the selection of any proposed substitute Monitor within fourteen (14) days after

notice by the staff of the Commission to Defendants of the identity of any proposed substitute

Monitor, Defendants shall be deemed to have consented to the selection of the proposed

substitute Monitor.

## V.

**IT IS FURTHER ORDERED** that:

A.      Defendants shall Submit to the Commission a verified written report within sixty (60)

days after the date this Order is entered, one (1) year after the date this Order is entered, and

annually for nine (9) years thereafter, setting forth in detail the manner and form in which they

have complied and are complying with this Order.  So long as Defendants are under common

ownership, their reports may be filed jointly.  If the Commission has appointed a Monitor, and if

Defendants are providing or receiving product under an Exempted Agreement, Defendants shall

1    Submit to the Monitor a copy of the report.  Among other things and without limitation,

2    Defendants shall include in each report:

3        1.      a copy of each agreement a Defendant has entered with any party to a

4                Brand/Generic Settlement signed by a Defendant if: (i) the Brand/Generic

5                Settlement Agreement includes an agreement by the Generic Filer not to research,

6                develop, manufacture, or Market the Subject Drug Product for any period of time;

7                and (ii) the agreement was entered within six (6) months of executing the

8                Brand/Generic Settlement Agreement, *provided that*, Defendants do not need to

9                submit any agreement that was submitted with a prior verified written report; and

10       2.      if, during the period covered by the report, an NDA Holder has supplied

11               Authorized Generic to a Defendant pursuant to a Contingent Supply Agreement

12               that Defendants assert is an Exempted Agreement, identify the Contingent Supply

13               Agreement; if Defendants have not obtained FDA approval for the Generic

14               Subject Drug Product, provide a statement describing the status of their efforts

15               and planned actions to obtain approval; and if Defendants are not able to

16               manufacture commercial quantities of the Generic Subject Drug Product, provide

17               a statement describing the status of their efforts and what steps they are taking to

18               develop commercial manufacturing capability.

19   B.      This Order does not alter the reporting requirements of Defendants pursuant to Section

20   1112 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.

21                                             **VI.**

22           **IT IS FURTHER ORDERED** that for the purpose of determining or securing

23   compliance with this Order, subject to any legally recognized privilege, and upon written request

24   and upon reasonable notice to Defendants, Defendants shall, without restraint or interference,

25   permit any duly authorized representative of the Commission:

26       1.      access, during office hours and in the presence of counsel, to all facilities and

27               access to inspect and copy all non-privileged business records and documentary

28               material related to compliance with this Order, including without limitation

1   electronically stored information as defined in Rule 2.7(a)(1) and (2), 16 C.F.R. §

2   2.7(a)(1), and books, ledgers, accounts, correspondence, memoranda, and other

3   records and documents (in whatever form such records and documents are kept)

4   in the possession or under the control of a Defendant, which copying services

5   shall be provided by Defendants at the request of the authorized representative(s)

6   of the Commission and at the expense of Defendants; and

7   2.   to interview officers, directors, or employees of Defendants, who may have

8   counsel present, regarding any such matters.

9   **VII.**

10   **IT IS FURTHER ORDERED** that Defendants shall notify the Commission at least

11   thirty (30) days prior to:

12   A.   Any proposed dissolution of Endo Pharmaceuticals Inc. or Endo International plc; or

13   B.   Any proposed acquisition, merger, or consolidation of Endo Pharmaceuticals Inc. or

14   Endo International plc; or

15   C.   Any other change in a Defendant, including, but not limited to, assignment and the

16   creation, sale or dissolution of subsidiaries, if such change might affect the compliance

17   obligations arising out of this Order.

18   **VIII.**

19   **IT IS FURTHER ORDERED** that:

20   A.   In connection with any FTC Litigation, Defendants shall:

21   1.   agree to service of process of all Commission subpoenas issued under Rule 45 of

22   the Federal Rules of Civil Procedure or Rule 3.34 of the Commission Rules of

23   Practice;

24   2.   respond to the Commission's requests for production of documents as though

25   Defendants were parties to the FTC Litigation and shall limit objections to those

26   available to a party to such litigation;

27   3.   not object to or file a motion to quash, on the grounds that the depositions are

28   unduly burdensome because Defendants are third parties, subpoenas from the

1   Commission for the deposition testimony of up to seven (7) of their officer(s),

2   director(s), agent(s), or employee(s), or corporate representative(s) (designated

3   under Federal Rule of Civil Procedure 30(b)(6) or Rule 3.33(c)(1) of the

4   Commission Rules of Practice).  Such depositions shall be scheduled at mutually-

5   agreeable dates, times, and locations in the United States;

6   4.   not object to any discovery request on the grounds that the requested documents

7   are not located in the United States;

8   5.   not object on grounds of timeliness to any motion(s) to compel the production of

9   documents that Defendants withheld as privileged or protected by the work

10   product doctrine during the FTC Investigation; and

11   6.   negotiate in good faith with the Commission to provide a declaration, affidavit,

12   and/or sponsoring witness, if necessary, to establish the authenticity and

13   admissibility of any documents and/or data that Defendants produce or have

14   produced to the Commission.

15   **IX.**

16   **IT IS FURTHER ORDERED** that:

17   A.   No information or documents submitted under this Order shall be disclosed by the

18   Commission to any person other than an authorized representative of the Commission, including

19   without limitation any Monitor appointed pursuant to this Order, except in the course of a legal

20   proceeding regarding enforcement or modification of this Order, or as otherwise required by law.

21   B.   In the event of a material change in the law governing the antitrust implications of

22   Brand/Generic Settlements, the Commission will consider, in good faith, modifications to this

23   Order proposed by Defendants.

24   **X.**

25   **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over these matters

26   for purposes of construction, modification, and enforcement of this Order.

27

28

**XI.**

**IT IS FURTHER ORDERED** that this Order shall terminate ten (10) years from the date on which the Order is issued.

**XII.**

**IT IS FURTHER ORDERED** that this action shall be dismissed with prejudice. Each party shall bear its own costs.

**SO ORDERED** this ___2nd___ day of ___Feb.___, 2017

_____

The Honorable William H. Orrick

1    SO STIPULATED AND AGREED:

2

3

4    _____    Date: _1/9/2017_
     Bradley Scott Albert
5    Deputy Assistant Director
     Health Care Division
6    Bureau of Competition
     Federal Trade Commission
7    FOR PLAINTIFF FEDERAL TRADE COMMISSION

8

9                                         Date: _____
10   _____
     Paul V. Campanelli
11   President and Chief Executive Officer of Endo Pharmaceuticals Inc.
     FOR ENDO PHARMACEUTICALS INC.
12

13                                        Date: _____
14   _____
     George G. Gordon
15   Dechert LLP

16   Jonathan L. Stern
     Steven G. Reade
17   Arnold & Porter Kaye Scholer LLP

18   Michael F. Brockmeyer
     Frommer, Lawrence & Haug LLP
19   COUNSEL FOR ENDO PHARMACEUTICALS INC.

20

21                                        Date: _____
22   _____
     Paul V. Campanelli
     President and Chief Executive Officer of Endo International plc
23   ENDO INTERNATIONAL PLC

24

25                                        Date: _____
26   _____
     George G. Gordon
27   Dechert LLP

28

1    SO STIPULATED AND AGREED:

2

3    _____        Date: _____

4    Bradley Scott Albert
     Deputy Assistant Director
5    Health Care Division
     Bureau of Competition
6    Federal Trade Commission
7    FOR PLAINTIFF FEDERAL TRADE COMMISSION

8

9    _____        Date: 1-6-2017

10   Paul V. Campanelli
     President and Chief Executive Officer of Endo Pharmaceuticals Inc.
11   FOR ENDO PHARMACEUTICALS INC.

12

13   _____        Date: 1-6-2017

14   George G. Gordon
     Dechert LLP
15

16   Jonathan L. Stern
     Steven G. Reade
17   Arnold & Porter Kaye Scholer LLP

18   Michael F. Brockmeyer
     Frommer, Lawrence & Haug LLP
19   COUNSEL FOR ENDO PHARMACEUTICALS INC.

20

21   _____        Date: 1-6-2017

22   Paul V. Campanelli
     President and Chief Executive Officer of Endo International plc
23   ENDO INTERNATIONAL PLC

24

25   _____        Date: 1-6-2017

26   George G. Gordon
     Dechert LLP
27

28

Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ENDO PHARMACEUTICALS INC., et. al.,** | |
| Plaintiffs, | |
| v. | Case No: 16-cv-5599 |
| **FEDERAL TRADE COMMISSION,** | |
| Defendant. | |

## <u>NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiffs Endo

Pharmaceuticals Inc. and Endo International plc hereby give notice that their claims against

Defendant in the above-captioned action are voluntarily dismissed with prejudice.  The

Defendant has not filed an answer or motion for summary judgment in this case.

**Exhibit 1 to Stipulated Order for Permanent Injunction - Page 1**

Dated:                                   Respectfully Submitted,

                                         _____
                                         George G. Gordon
                                         Christine C. Levin
                                         Jennings F. Durand
                                         DECHERT LLP
                                         Cira Centre, 2929 Arch Street
                                         Philadelphia, PA 19104
                                         Tel.: (215) 994-4000
                                         Fax: (215) 994-2222
                                         george.gordon@dechert.com
                                         christine.levin@dechert.com
                                         jennings.durand@dechert.com


                                         _____
                                         Steven G. Reade (*pro hac vice*)
                                         Ryan Z. Watts (*pro hac vice*)
                                         Charles B. Weinograd (*pro hac vice*)
                                         Jonathan L. Stern (*pro hac vice*)
                                         ARNOLD & PORTER LLP
                                         601 Massachusetts Avenue NW
                                         Washington, DC 20001
                                         Tel.: (202) 942-5000
                                         Fax: (202) 942-5999
                                         steven.reade@aporter.com
                                         ryan.watts@aporter.com
                                         charles.weinograd@aporter.com
                                         jonathan.stern@aporter.com

                                         *Counsel for Defendants Endo*
                                         *Pharmaceuticals Inc. and Endo International*
                                         *plc*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ENDO PHARMACEUTICALS INC., et. al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**FEDERAL TRADE COMMISSION,**<br><br>Defendant. | Case No: 16-cv-5600 |

## <u>NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiffs Endo

Pharmaceuticals Inc. and Endo International plc hereby give notice that their claims against

Defendant in the above-captioned action are voluntarily dismissed with prejudice.  The

Defendant has not filed an answer or motion for summary judgment in this case.

**Exhibit 1 to Stipulated Order for Permanent Injunction - Page 3**

Dated:                                    Respectfully Submitted,

_____

George G. Gordon
Christine C. Levin
Jennings F. Durand
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-4000
Fax: (215) 994-2222
george.gordon@dechert.com
christine.levin@dechert.com
jennings.durand@dechert.com


_____

Steven G. Reade (*pro hac vice*)
Ryan Z. Watts (*pro hac vice*)
Charles B. Weinograd (*pro hac vice*)
Jonathan L. Stern (*pro hac vice*)
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
steven.reade@aporter.com
ryan.watts@aporter.com
charles.weinograd@aporter.com
jonathan.stern@aporter.com

*Counsel for Defendants Endo
Pharmaceuticals Inc. and Endo International
plc*

2

**Exhibit 1 to Stipulated Order for Permanent Injunction – Page 4**

Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>       **Plaintiff,**<br><br>    **vs.**<br><br>**ACTAVIS, INC., et al.,**<br><br>       **Defendants.** | **Case Number: 1:09-cv-955-TWT** |

### Unopposed Motion for Voluntary Dismissal with Prejudice as to Defendants Par Pharmaceutical Companies, Inc. and Paddock Holdings, LLC

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff Federal Trade Commission ("FTC") moves this Court to enter an order dismissing the above-captioned case as against defendants Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. now known as Paddock Holdings, LLC ("Paddock"). As grounds for this request, the FTC states as follows:

1.     On January [  ], 2017, Judge Orrick in the Northern District of California entered a Stipulated Order for Permanent Injunction in the case styled, *Federal Trade Commission v. Endo Pharmaceuticals Inc. et. al*, No. [  ] (N.D.

**Exhibit 2 to Stipulated Order for Permanent Injunction – Page 1**

Cal.).  A copy of the Stipulated Order for Permanent Injunction  ("Permanent

Injunction") is attached as Exhibit A.

2.      As of September 28, 2015, Par is a wholly owned indirect subsidiary

of Endo International plc. ("Endo").

3.      Under the Permanent Injunction, Endo and its subsidiaries (including

Par) are prohibited from entering into agreements similar to those challenged in

this case. (Permanent Injunction at § II.) The scope of this prohibition is consistent

with the relief the FTC seeks in this case. *See* Federal Trade Commission's Third

Supplemental Response to Actavis Inc.'s First Set of Interrogatories (Sept. 8,

2016). Entry of the Permanent Injunction, therefore, adequately addresses the

alleged anticompetitive conduct at issue here with respect to Par.

4.      In light of the Permanent Injunction, the FTC also seeks voluntary

dismissal against Paddock, Par's generic AndroGel joint venture partner. Paddock

is no longer engaged in the manufacture or sale of pharmaceutical products, and no

longer controls the assets or entities involved in the alleged anticompetitive

conduct.

5.      The FTC, Par, and Paddock have reached agreement on costs and

cooperation in this case. A copy of the letter agreement is attached as Exhibit B.

6.       "[I]n most cases, a voluntary dismissal should be granted unless the

defendant will suffer clear legal prejudice." *Pontenberg v. Boston Scientific Corp.*,

2

**Exhibit 2 to Stipulated Order for Permanent Injunction - Page 2**

252 F.3d 1253, 1255 (11th Cir. 2001) (quoting *McCants v. Ford Motor Co., Inc.*,

781 F.2d 855, 856–57 (11th Cir. 1986)). Here, Par and Paddock agree that they

suffer no prejudice as a result of a dismissal with prejudice. For the foregoing

reasons, therefore, the FTC respectfully requests that the Court dismiss this case as

to Defendants Par and Paddock.


Date: January [   ], 2017                    Respectfully submitted,

                                             _____

                                             Saralisa C. Brau
                                             Randall M. Weinsten
                                             Federal Trade Commission
                                             600 Pennsylvania Avenue, NW
                                             Washington, DC  20580
                                             sbrau@ftc.gov
                                             Telephone: (202) 326-2774
                                             Facsimile:  (202) 326-3384

                                             *Counsel for Plaintiff Federal Trade*
                                             *Commission*

**Exhibit 2 to Stipulated Order for Permanent Injunction – Page 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

    **vs.**

**ACTAVIS, INC., et al.,**

        **Defendants.**

**Case Number: 1:09-cv-955-TWT**

### [Proposed] Order of Dismissal with Prejudice

Before this Court is Plaintiff Federal Trade Commission's Unopposed Motion for Voluntary Dismissal with Prejudice as to Defendants Par Pharmaceutical Companies, Inc. and Paddock Laboratories now known as Paddock Holdings, LLC. After consideration of the Motion, the Court is of the opinion that the motion should be GRANTED.

IT IS HEREBY ORDERED that Plaintiff Federal Trade Commission's claims in the above-captioned action against Defendants Par Pharmaceutical Companies, Inc. and Paddock Laboratories now known as Paddock Holdings, LLC are hereby dismissed with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure and each party is to bear its own attorneys' fees and costs.

**Exhibit 2 to Stipulated Order for Permanent Injunction – Page 4**

ENTERED and ORDERED this _____ day of _____, 2017.


_____
Honorable Thomas W. Thrash, Jr.

**Exhibit 2 to Stipulated Order for Permanent Injunction – Page 5**